UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DARCY N., on Behalf of RICHARD N.,  )
                                     )
                 Plaintiff           )
                                     )
v.                                   )    No. 2:17-cv-00374-NT
                                     )
NANCY A. BERRYHILL,                  )
Deputy Commissioner for Operations,  )
Performing the Duties and Functions not )
Reserved to the Commissioner of      )
Social Security,                     )
                                     )
                 Defendant           )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff's father, now deceased (the "decedent"), capable of performing work existing in significant numbers in the national economy through his date last insured ("DLI"). The plaintiff seeks remand on the bases that the ALJ (i) failed in his duty to develop the record adequately when he declined her requests to call a medical expert to testify at hearing, in contravention of Social Security Ruling 83-20 ("SSR 83-20"), (ii) reached a conclusion unsupported by substantial evidence that, on or before the decedent's DLI, his liver disease did not meet or medically equal the criteria of any impairment included in Appendix 1, 20 C.F.R. Part 404, Subpart P (the "Listings"), and, (iii) in refusing to call

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

a medical expert at hearing, transgressed portions of the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") and deprived her of the opportunity to prove that the decedent's liver disease and/or chronic obstructive pulmonary disease ("COPD") medically equaled the criteria of a listing. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 11) at 8-17. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the decedent met the insured status requirements of the Social Security Act through December 31, 2013, Finding 1, Record at 14; that, through his DLI, he had the severe impairments of COPD, alcohol abuse, hepatorenal syndrome, and fulminant hepatitis with acute liver failure, Finding 3, *id.*; that, through his DLI, he had no impairment or combination of impairments that met or medically equaled the criteria of any of the Listings, Finding 4, *id.*; that, through his DLI, he had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he could lift and/or carry no more than 10 pounds frequently, stand and/or walk for three hours in an eight-hour workday, sit for six hours in an eight-hour workday, occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and needed to avoid temperature extremes, extreme humidity, or concentrated respiratory irritants, Finding 5, *id.* at 15; that, through his DLI, considering his age (48 years old, defined as a younger individual, on his DLI), limited education, work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 19; and that he, therefore, had not been disabled from November 1, 2011, his alleged onset date of disability, through December 31, 2013, his DLI, Finding 11, *id.* at

20. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the claimant's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

## I. Discussion

On April 25, 2014, the decedent filed for both SSD, or Title II, and Supplemental Security Income ("SSI"), or Title XVI, benefits, alleging disability beginning on November 1, 2011. *See* Record at 66-67. "To be eligible to receive SSD benefits [a claimant] ha[s] to have been disabled on or before [his or] her date last insured . . . ; however, eligibility for SSI benefits is not dependent on insured status." *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135 at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999).

Following the decedent's death on August 21, 2014, the plaintiff was substituted as a party. *See* Record at 117, 208. On November 12, 2014, after review by agency nonexamining consultants Brian Stahl, Ph.D., and Donald Trumbull, M.D., the commissioner granted the decedent's SSI claim retroactive to his application date, April 25, 2014, and denied his SSD claim. *See id.* at 53-55, 65.

Dr. Stahl concluded that, with respect to both the SSD and SSI claims, the decedent met the criteria of Listing 12.09 (Substance Addiction Disorders) "as it contributed to his medical condition/death[, f]or current and prior to the DLI." *Id.* at 54, 61.[2] He noted that "[no] other mental health condition [had been] diagnosed and treated." *Id*.

---

[2] Prior to the removal of Listing 12.09 from the Listings effective January 17, 2017, and for purposes of this appeal, Listing 12.09 read, in relevant part:

> 12.09 *Substance Addiction Disorders*: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.
>
> The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.
>
> ***
>
> F. Liver Damage. Evaluate under [Listing] 5.05.

Listing 12.09 (2016); Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66152 (Sept. 26, 2016). All further references to Listing 12.09 herein are to the version in effect in 2016.

4

With respect to the decedent's SSI claim, Dr. Trumbull concluded:

Medically Equals [Listing] 5.05B:

Cl[ai]m[a]nt w[ith] long h[istory] [alcohol] abuse w[ith] liver disease gen[eral]ly stable w[ith] cl[ai]m[a]nt's stated reduced intake and desire to stop (3/13/13 . . . and beyond). No urgent/emergent decompensations & no evidence of listing level dysfunction during the Title 2 period or until he begins drinking heavily 1 mon[th] prior to his 8/9/14 admit for acute hepatorenal decompensation.

Evidence does not satisfy the 6/mo[nth]/60d[a]y rule; however, cl[ai]m[a]nt's liver disease had received limited attention (in the available [medical evidence of record]) prior to his admit but can be expected to have been of sufficient severity to result in his death after resumption of higher [alcohol] intake in July 2014.

I believe it is reasonable to extrapolate the onset to fully favorable for the Title 16 period.

*Id.* at 55. The commissioner determined that the decedent was disabled with an established onset date of April 25, 2014, and that "[s]ubstance abuse is documented, but DAA [drug and alcohol abuse] is not material to the determination[.]" *Id.*[3]

With respect to the decedent's SSD claim, Dr. Trumbull concluded that there was insufficient medical evidence of record to evaluate the severity of his condition for the period from November 1, 2011, through February 28, 2013. *See id.* at 64. He assessed the decedent's physical RFC for the period from March 1, 2013, through June 30, 2014. *See id.* at 62-64. In response to a request for additional explanation of his RFC opinion, he stated, in relevant part, that there was "little discussion of liver dis[ease]." *Id.* at 64. Two sections of the case analysis form titled "Adult Listings Considered" and "Adult Medical Condition" indicated that Listings 3.02 (Chronic

---

[3] The need to determine whether substance use is material to disability stems from a provision of the Contract with America Advancement Act of 1996 ("Contract with America") that "eliminated disability benefits where drug addiction or alcoholism was a contributing factor material to the Commissioner's determination of disability." *Bartley v. Barnhart*, 117 Fed. App'x 993, 994 (6th Cir. 2004) (citation and internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(2)(C). That Contract with America directive was incorporated into the commissioner's regulations, which provide in relevant part, "The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1).

5

Pulmonary Insufficiency), 5.05 (Chronic Liver Disease), and 12.09 (Substance Addiction Disorders) had been considered and that the decedent's impairment(s) met Listing 12.09. *Id*. at 62. The commissioner determined that the decedent had not been disabled prior to his DLI, indicating that his alcohol abuse was material to the determination of disability. *See id*. at 65.

On reconsideration, following review by a new set of agency nonexamining consultants, Susan Lichtman, Ph.D., and Benjamin Weinberg, M.D., the commissioner again denied the decedent's SSD claim by decision dated March 12, 2015. *See id*. at 72-78. Dr. Lichtman found that the medical evidence of record supported a diagnosis of alcohol dependence from the decedent's alleged onset date of disability through his DLI and that this impairment met Listing 12.09 "as it contributed to his medical condition and eventual death." *Id*. at 73. She noted that no other mental health condition was diagnosed and treated by treating providers. *See id*. Dr. Weinberg concluded that there was insufficient medical evidence of record to evaluate the severity of the decedent's condition for the period from November 1, 2011, through February 28, 2013, and assessed his physical RFC for the period from March 1, 2013, through June 30, 2014. *See id*. at 73-76. The sections of the case analysis form titled "Adult Listings Considered" and "Adult Medical Condition" again indicated that Listings 3.02, 5.05, and 12.09 had been considered and specified that Listing 12.09(F) had been met. *Id*. at 73. The commissioner determined, as she had on initial review, that the decedent had not been disabled prior to his DLI, indicating that his alcohol abuse was material to the determination of disability. *See id*. at 77-78.

On July 13, 2016, the ALJ denied a request by the plaintiff's counsel that he "schedule a qualified medical expert for the hearing" and, in addition, subpoena Dr. Trumbull to be "questioned appropriately concerning his retrospective opinion concerning the duration of the period of the listing-level opinion." *Id.* at 139-41. The plaintiff's counsel renewed that request in

a July 28, 2016, pre-hearing brief and at hearing the following day, arguing that the absence of a medical expert would deprive the plaintiff of the opportunity to prove that her father was disabled prior to his DLI. *See id*. at 29-33, 47, 211-14. This was so, he contended, because the decedent's treating providers had refused to discuss the case, and agency policy precludes the use of an outside expert to determine whether a claimant's impairment(s) equal a listing. *See id*. at 29-33, 211, 214. He added that Dr. Trumbull had never considered whether the onset date of the decedent's disability extended back to the decedent's DLI, and that the question of whether the decedent's impairments equaled Listings 3.02 or 5.05 on or prior to his DLI was never addressed on either initial review or reconsideration. *See id*. at 29-33, 47.

In addition to hearing the plaintiff's counsel's argument on his renewed request for a medical expert, the ALJ admitted evidence that included an affidavit of the plaintiff, *see id*. at 28, 207-08, and heard her testimony as well as that of a vocational expert, *see id*. at 34-47.

In her affidavit and hearing testimony, the plaintiff recounted taking an active role in monitoring her father's health following his hospitalization in November 2012. *See id*. at 38-39, 207. She reported that, between his hospitalization in 2012 and his death in August 2014, her father would experience bouts of coughing so severe that he would lose consciousness and become incontinent if he could not access his rescue inhaler. *See id*. at 39, 208. She testified that he suffered from swelling in his lower extremities that limited his mobility and sometimes kept him from wearing shoes. *See id*. at 39-40, 207. She stated that her father had struggled with sobriety for a number of years and had been sober for a period prior to June 2014, when he learned that his significant other had terminal cancer. *See id*. at 44-46. She testified that, at that point, he began drinking again. *See id.* at 45. She stated that her father's significant other died on July 4, 2014,

he was hospitalized on August 9, 2014, and he died in the hospital on August 21, 2014. *See id.* at 45, 208.

In his September 22, 2016, decision, the ALJ reaffirmed his denial of the plaintiff's counsel's requests that a medical expert testify at hearing, explaining:

> [T]he State agency considered whether the claimant met or medically equaled listing section 5.05, on or before his [DLI], and no new material evidence for this period is available. [The plaintiff] essentially seeks another medical opinion; however, there is no legal basis to allow her request.

*Id.* at 11 (citations omitted); *see also id.* at 29 (ALJ's explanation at hearing for basis of denial of requests).

### A. Failure To Develop Record: SSR 83-20

The plaintiff first seeks remand on the basis that the ALJ violated SSR 83-20 when he declined her counsel's request to have a medical expert present at hearing to opine as to the date of onset of the decedent's disability. *See* Statement of Errors at 8-11; *see also, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) (An ALJ has "a duty to develop an adequate record from which a reasonable conclusion can be drawn.") (citation and internal quotation marks omitted). SSR 83-20 provides, in pertinent part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 51.

SSR 83-20 "instructs an ALJ to consult a medical expert when the ALJ must infer a claimant's date of disability onset on the basis of ambiguous medical evidence." *Fischer v. Colvin*, 831 F.3d 31, 32 (1st Cir. 2016). If "the medical evidence [i]s not ambiguous[,]" an ALJ need not

8

"draw inferences as to whether [a claimant's] onset date preceded the expiration of her insured status[,]" and SSR 83-20 does "not require the ALJ to consult a medical expert." *Id*.

The plaintiff contends that *Palmer v. Soc. Sec. Admin. Comm'r*, No. 2:13-cv-00194-NT, 2014 WL 2048199 (D. Me. May 19, 2014), in which this court held remand warranted based on an ALJ's failure to call a medical expert pursuant to SSR 83-20, "is dispositive in this case." Statement of Errors at 9. In *Palmer*, this court held that an ALJ committed reversible error in failing to call a medical expert at hearing pursuant to SSR 83-20 to infer a claimant's onset date of disability when the claimant had been found disabled as of June 9, 2010, and the medical evidence was ambiguous as to whether she had been disabled as of her DLI, March 31, 2007. *See Palmer*, 2014 WL 2048199 at *1, *5. This ambiguity was created, the court found, when the record contained (i) a treating physician's note postdating the opinions of agency nonexamining consultants on which the ALJ had relied and indicating that the claimant had "'significant patellofemoral osteoarthritis in both knees and what is probably endstage weightbearing surface arthritis in the left knee,'" and (ii) an agency examining consultant's note documenting the claimant's "report[] that she started to develop leg pain and ankle swelling about five years earlier" (a time period prior to her DLI). *Id.* at *3, *5.

The plaintiff argues that in this case, as in *Palmer*, "there is . . . clearly an ambiguity that results from the differences in the two . . . initial decisions regarding the materiality of the deceased's alcohol use disorder and on the severity of [his] liver disease." Statement of Errors at 9. In so arguing, she alludes to the commissioner's stated rationales for the grant of the SSI claim and the denial of the SSD claim: that the decedent's alcohol use was material to the determination of disability on the SSD but not the SSI claim. *See* Record at 55, 65. At oral argument, her counsel contended that this was important because the commissioner impliedly found the decedent's liver

9

disease disabling pursuant to Listing 12.09 throughout the entire time period at issue, denying SSD benefits solely on the basis that his alcohol abuse was material to the determination of disability prior to his DLI.

She asserts that, in the face of this unacknowledged ambiguity, the ALJ erroneously relied on the Trumbull opinion to find that the decedent had not been disabled prior to his DLI when there was no evidence that Dr. Trumbull had even considered the issue of the onset of disability relative to the SSD claim. *See* Statement of Errors at 9-10. She acknowledges that, for purposes of the SSI claim, Dr. Trumbull found that the decedent's impairments met Listing 5.05 as of April 24, 2014. *See id*. at 10. However, she argues that this date had only legal significance – that it was the date on which the decedent filed his claim for SSI benefits – not medical significance. *See id*.

She contends that, accordingly, the ALJ committed reversible error in failing to call a medical expert who could have taken into consideration other evidence as contemplated by SSR 83-20 – her own testimony and sworn affidavit – in inferring the onset date of her father's disability. *See id*. At oral argument, her counsel asserted that the facts here are even more compelling than in *Palmer* because, whereas *Palmer* involved a more than three-year gap between the claimant's found date of disability and her DLI, *see Palmer*, 2014 WL 2048199, at *1, the gap in this case is less than four months, and in this case, unlike in *Palmer*, there is and can be no treating physician opinion, the decedent's former physicians having declined to offer one.

Yet, as the commissioner rejoins, *see* Opposition at 7-8, the seeming tension between the two decisions is illusory. The commissioner's stated rationales for decisions on initial review and reconsideration are not medical evidence. Her denials of the decedent's SSD claim on the basis that alcoholism was material to the determination of disability could only have derived from the

opinions of Drs. Stahl and Lichtman that this was so. *Compare* Record at 61-62, 72-73 *with id.* at 65, 77-78. Yet, while Dr. Stahl on initial review, and Dr. Lichtman on reconsideration, indicated that the decedent's condition met Listing 12.09 prior to his DLI, *see id.* at 61-62, 72-73, they were not competent to make that judgment.

"Listing 12.09 is structured as a reference listing; that is, it will only serve to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances." Listing 12.00(A). The decedent had no mental health impairment apart from substance addition disorder. *See* Record at 61, 73. Thus, he could be found disabled, if at all, only by reference to a listing pertaining to his physical impairments. Only one of the five physical impairment listings cross-referenced in Listing 12.09 was relevant here – Listing 5.05, pertaining to liver damage. *See* Listing 12.09(E)-(I). As mental health experts, Drs. Stahl and Lichtman were not qualified to evaluate whether the decedent's liver damage met the criteria of Listing 5.05. *See* 20 C.F.R. § 404.1616(f) (2016) ("Psychological consultants are limited to the evaluation of mental impairments[.]").[4]

Drs. Trumbull and Weinberg, who were qualified to do so, unequivocally found that the decedent's liver disease did not meet the criteria of Listing 5.05 (or any other physical impairment listing) prior to his DLI. Both found insufficient evidence to assess the plaintiff's physical impairments for the period from November 1, 2011, through February 28, 2013, *see* Record at 64, 75-76, and both impliedly found that he did not meet or equal either Listing 3.02 or Listing 5.05

---

[4] Section 404.1616 was revised effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5873 (Jan. 18, 2017). However, it continues to provide that, "[i]n a case where there is evidence of both physical and mental impairments, the medical consultant will evaluate the physical impairments . . ., and the psychological consultant will evaluate the mental impairment(s)[.]" *Id.* at 5873 (quoting 20 C.F.R. § 404.1616(e) as effective Mar. 27, 2017).

11

for the period from March 1, 2013, through December 31, 2013, by proceeding to assess a physical RFC for that period, *see id*. at 62-64, 73-75.

Social Security Ruling 96-6p ("SSR 96-6p"), which was in effect as of the time of the ALJ's decision, provided: "The signature of a State agency medical or psychological consultant [on the disability determination explanation] . . . ensures that consideration by a physician (or psychologist) designated by the [c]ommissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96-6p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 130.[5] *See also, e.g.,* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your [RFC] based on all the relevant medical and other evidence in your case record."); *Parker v. Colvin*, Civil No. 2:13-cv-286-DBH, 2014 WL 3533323, at *4 n.3 (D. Me. July 15, 2014) (fact that both agency nonexamining consultants discussed claimant's RFC meant that "they could only have rejected the possibility that any listing was met").

In addition, in conjunction with the decedent's SSI claim, Dr. Trumbull expressly considered the medical question of his onset date of disability, explaining that his liver disease could have been "expected to have been of sufficient severity to result in his death" after he resumed a higher alcohol intake in July 2014; however, it was "reasonable to extrapolate the onset to fully favorable for the Title 16 period" – that is, to infer an onset date prior to that indicated by the medical evidence to provide the maximum available benefits on the SSI claim. Record at 55.

---

[5] SSR 96-6p was superseded effective March 27, 2017, by Social Security Ruling 17-2p ("SSR 17-2p"). *See* Social Security Ruling (SSR) 17-2p: Titles II and XVI: Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process To Make Findings About Medical Equivalence, 82 Fed. Reg. 15263, 15263-64 (Mar. 27, 2017).

Thus, nothing in the agency nonexamining consultants' reports or the medical evidence created any ambiguity as to onset date requiring that the ALJ call a medical expert at hearing pursuant to SSR 83-20. As the commissioner observes, *see* Opposition at 6, in this case, unlike in *Palmer*, agency nonexamining consultants had the benefit of review of the entirety of the available medical evidence. There was no new medical evidence that could have created an ambiguity as to onset date.

As the commissioner contends, *see* Opposition at 6-7, this case is more akin to *Moreau v. Colvin*, No. 1:14-CV-191-JHR, 2015 WL 1723230 (D. Me. Apr. 14, 2015), in which this court held remand unwarranted on the basis of an ALJ's failure to call a medical expert pursuant to SSR 83-20 when (i) agency nonexamining consultants had made "affirmative findings that the [claimant] did not have disabling limitations prior to his [DLI]" and (ii) the ALJ had "determin[ed] that later-submitted evidence was cumulative of the evidence [those consultants had] reviewed[.]" *Moreau*, 2015 WL 1723230, at *7. The plaintiff points to no medical evidence that was not available to Drs. Trumbull and Weinberg at the time they made their respective determinations that the decedent was not disabled prior to his DLI.[6]

I do not understand the plaintiff to argue that her own statements suffice to create ambiguity as to the decedent's onset date of disability but, rather, that a medical expert should have been called to hear her testimony as a result of the ambiguity she contends existed. *See* Statement of Errors at 10. However, to the extent that she does press this argument, it is unavailing.

---

[6] At oral argument, the plaintiff's counsel further contended that ambiguity was created by two 2009 records diagnosing the decedent with alcoholic hepatitis and hepatomegoly and a 2012 record of a hospitalization for a pulmonary crisis in which a finding of increased liver enzyme was noted. He argued that these records illustrated the progressive nature of the liver disease caused by the decedent's alcoholism, which eventually took his life in August 2014. Yet, he did not dispute the commissioner's representation that Drs. Trumbull and Weinberg reviewed all of the medical evidence. *See* Opposition at 6. In any event, it is not self-evident that the 2009 diagnoses and 2012 finding create ambiguity as to the decedent's onset date of disability.

Assuming, *arguendo*, that the testimony of a layperson can suffice to create ambiguity regarding a claimant's onset date of disability, the plaintiff's testimony falls short of doing so here. The ALJ deemed the plaintiff's descriptions of her father's symptoms cumulative of the medical evidence of record, which Drs. Trumbull and Weinberg considered before rendering their opinions. *See* Record at 18 ("[The plaintiff]'s testimony is consistent with the medical evidence of record and with the evidence of record as a whole."). The plaintiff does not challenge this finding. *See* Statement of Errors at 8-17.

For all of the foregoing reasons, the plaintiff falls short of demonstrating entitlement to remand on the basis of the ALJ's failure to call a medical expert to testify at hearing pursuant to SSR 83-20.

### B. Lack of Substantial Evidence for Step 3 Finding

The plaintiff next argues that the ALJ's conclusion that the decedent had no impairment meeting or equaling the criteria of a listing prior to his DLI is unsupported by substantial evidence. *See* Statement of Errors at 11-15. She contends that this is so because (i) Drs. Stahl and Lichtman, the only agency nonexamining consultants to expressly consider the listings, found that the decedent met Listing 12.09, and hence was disabled, for the entire time period at issue, (ii) the decedent's SSD claim was denied on reconsideration on the basis that, although he met the criteria of Listing 12.09 by reference to Listing 5.05, alcohol abuse was material to the finding of disability, and (iii) the ALJ erroneously inferred that Dr. Trumbull had expressed an opinion as to whether Listing 5.05 was met or equaled prior to the decedent's DLI. *See id*.

For the reasons discussed above, these points are without merit. Drs. Stahl and Lichtman, as psychologists, were not qualified to opine that the decedent met Listing 12.09 by reference to Listing 5.05. The commissioner's explanation for the rejection of the decedent's claim on

reconsideration is not medical evidence. And, most importantly, in reviewing the decedent's SSI claim, Dr. Trumbull expressly considered whether his impairments were at listing-level severity prior to his DLI and concluded that they were not.

The ALJ's finding that the decedent had no impairment meeting or equaling the criteria of a listing prior to his DLI, hence, was supported by substantial evidence.

### C. Failure To Develop Record: HALLEX

The plaintiff finally contends that, in denying her requests to subpoena Dr. Trumbull or to call a different medical expert to testify at hearing, the ALJ violated his duty to develop an adequate record in an additional respect, transgressing portions of the HALLEX that bear on the circumstances in which a medical expert must be called at hearing. *See* Statement of Errors at 15-17; *see also, e.g., Heggarty*, 947 F.2d at 997. I find no error.

The plaintiff asserts that the ALJ's denial of her request to have a medical expert present at hearing deprived her of the ability to prove that the decedent's impairments equaled Listing 3.02 (COPD) and/or Listing 5.05 (liver disease) given that the agency will consider only the opinions of its own experts on the question of whether a listing is equaled. *See* Statement of Errors at 15-16 & n.19; HALLEX § I-2-6-70(D) ("An ALJ will consider opinions about medical equivalence from a physician or psychologist designated by the [c]ommissioner whenever a claimant is not engaging in substantial gainful activity and has a severe impairment(s) that does not 'meet' the requirements of a listing.") (citations omitted).

She cites (i) section I-2-5-30 of the HALLEX for the proposition that ALJs have an obligation to consider prior to a hearing whether a medical expert is needed to develop the record, (ii) section I-2-5-32 for the proposition that the primary reason for ALJs to arrange for a medical expert is to obtain opinions to help them evaluate the medical evidence and complete the record to

15

support their conclusions on the ultimate issue of disability, and (iii) section I-2-5-34(A) for the proposition that ALJs must obtain a medical expert when they consider whether a claimant's impairment(s) medically equal a listing. *See* Statement of Errors at 16 & nn. 22-23.[7]

Yet, this court has rejected the proposition that HALLEX § I-2-5-34(A) requires ALJs to consult with medical experts when they are considering whether a claimant's impairment(s) equal a listing, reasoning:

> [HALLEX § I-2-5-34(A)(1)] is most reasonably read to mean what it says: that an ALJ must consult with a medical expert only when considering finding that a claimant's impairments medically equal a listing, not when he or she is considering finding that they do not. If, as the plaintiff argues, this provision required that an ALJ call upon a medical expert to determine *whether or not* a claimant's impairments equaled a listing, an ALJ would be obliged, as a practical matter, to call upon a medical expert at hearing in every case involving at least one severe impairment, despite having the benefit of opinions rendered by agency nonexamining consultants regarding the Listings on initial review and reconsideration.

*Dubois v. Berryhill*, No. 1:17-cv-00076-JDL, 2017 WL 6000340, at *3 (D. Me. Dec. 3, 2017) (rec. dec., *aff'd* Feb. 28, 2018) (emphasis in original).[8]

In this case, the ALJ was not considering finding that the decedent's impairment(s) equaled a listing. To the contrary, he expressly found that they did not. *See* Finding 4, Record at 14. He

---

[7] HALLEX § I-2-5-30 provides, in relevant part, that, before scheduling a hearing, an ALJ "must review all of the evidence to determine if additional evidence is needed to inquire fully into the matters at issue[,]" and that, "[i]f, after review, the ALJ determines he or she needs an ME [medical expert] . . . opinion, the ALJ will obtain the opinion[.]" HALLEX § I-2-5-30(A). HALLEX § I-2-5-32 provides, in relevant part, that "[t]he need for ME opinion evidence is generally left to the ALJ's discretion, except in the circumstances outlined in [HALLEX §] I-2-5-34[,]" and that "[t]he primary reason an ALJ will request an ME opinion is to help the ALJ evaluate the medical evidence in a case[,]" resulting "in a more complete record to support the ALJ's conclusion on the ultimate issue of disability." *Id*. § I-2-5-32(A)-(B). HALLEX § I-2-5-34 provides, in relevant part, that an "ALJ must obtain an ME opinion" when he or she "is considering finding that the claimant's impairment(s) medically equals a listing." *Id*. § I-2-5-34(A)(1).

[8] At oral argument, the plaintiff's counsel cited HALLEX § I-2-6-70 as additional authority in support of the proposition that the ALJ erred by failing to call a medical expert to opine on the question of medical equivalence at hearing. That provision provides, *inter alia*, that "[a]n ALJ must obtain ME testimony specific to the issue of medical equivalence *if he or she intends to find that the claimant equals the requirements of a listing*." HALLEX § I-2-6-70(D) (emphasis added). This language is entirely consistent with the court's construction of HALLEX § I-2-5-34 in *Dubois*.

16

acknowledged the plaintiff's request that he call a medical expert at hearing but explained that he saw no necessity to do so, as the opinions of Drs. Trumbull and Weinberg had supplied a sufficient basis on which to reach the conclusion that neither of those Listings was met nor equaled for the period prior to the decedent's DLI. *See id*. at 11, 14. As discussed above, this conclusion is supported by substantial evidence. The ALJ, hence, transgressed neither a HALLEX requirement nor the precept that an ALJ must develop a record adequate to support his or her conclusions.

To the extent that the plaintiff means to suggest that the ALJ's refusal to call a medical expert violated her right to due process, *see* Statement of Errors at 15-17, this argument also is unavailing. To be entitled to remand on this basis, a Social Security claimant must demonstrate not only the existence of a due process violation but also resulting prejudice. *See, e.g., Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due-process violation predicated on administrative law judge's denial of permission to submit post-hearing written question to vocational expert when "the ALJ's failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 Fed. Appx. 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold [a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing.").

"[I]t is the burden of the [claimant] challenging the commissioner's decision to identify evidence in the record that, if properly considered, could support a conclusion that the claimant's impairments do meet or medically equal a giving [l]isting." *Adams ex rel. J.A. v. Barnhart*, No. 05-134-B-W, 2005 WL 3832408, at *2 (D. Me. Mar. 6, 200[6]) (rec. dec., *aff'd* Mar. 24, 2006). The plaintiff fails to do so, as a result of which she falls short of demonstrating either that the ALJ

violated due process in declining to call a medical expert at hearing or that she was prejudiced as a result.[9]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 3rd day of June, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[9] The plaintiff also contends in passing that the ALJ's denial of her request to subpoena Dr. Trumbull violated her right to confront an adverse witness pursuant to *Richardson v. Perales*, 402 U.S. 389 (1971). *See* Statement of Errors at 17 & n.24. Because this issue is "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," it is "deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).